March 28, 1939

Honorable E. R. Lindley
Chief Clerk
House of Representatives
Austin, Texas

Dear Sir:

> Opinion No. O-442
> Re: Validity of Falls County's
> claim against the State for
> recovery of gross production
> taxes on its royalty inter-
> est in oil produced from its
> public school lands.

This is in answer to your letter of March 7, 1939, which was accompanied by a file that included several other letters and written instruments. We have examined these letters and instruments for the purpose of determining whether or not Falls County has a valid claim against the State of Texas.

The facts appear to be as follows:

Falls County owns certain public school land in Archer County, which land was granted to it by the State for educational purposes in 1852. Prior to September, 1933, Falls County leased part of this land for oil purposes granting the lessee the right to take oil from the land, Falls County retaining what is commonly known as a one-eighth royalty, which was a one-eighth interest in the oil produced. After the lease was made the county sold one-half of its royalty interest, and thereby only retained a one-sixteenth interest in the oil produced. Beginning with September, 1933, oil was actually produced; and the lessee who took the oil from the earth sold it for the period beginning September, 1933, and ending November, 1934, to The Texas Company, who thereby became what is known as the "first purchaser". The Texas Company paid the "gross production" tax provided for in Article 7057a, of the Revised Civil Statutes of Texas, on all of the oil that it purchased. The parts of Article 7057a that are material to this discussion are as follows:

> "Section 1 (1). For the purpose of this
> Act "producer" shall mean any person owning,
> controlling, managing or leasing any oil well
> and/or any person who produces in any manner

any oil by taking it from the earth or waters in this State, and shall include any person owning any royalty or other interest in any oil or its value whether produced by him, or by some other person on his behalf, either by lease, contract or otherwise.

"(2). "First purchaser" shall mean any person purchasing crude oil from the producer.

"(15). The tax hereby levied shall be paid by the first purchaser purchasing the same from the producer, who shall deduct the same from the amount paid producer, as aforesaid; * * *

"Section 2. (1). There is hereby levied an occupation tax on oil produced within this State of two and three-quarters cents (2-3/4¢) per barrel of forty-two (42) standard gallons. * * *

"(2). The tax hereby levied shall be a liability of the producer of oil * * *

"(3). The purchaser of oil shall pay the tax on all oil purchased and deduct tax so paid from payment due producer on other interest holder, making such payments so deducted to the Comptroller of Public Accounts by legal tender or cashier's check payable to the State Treasurer. * * *

"(6). The tax herein levied shall be borne ratably by all interested parties, including royalty interests, and producers and/or purchasers of oil are hereby authorized and required to withhold from any payment due interested parties, the proportionate tax due."

One-sixteenth of the purchase price was paid by The Texas Company to the royalty owner; and the other interest holders were each paid their part of the purchase price. As directed by the statute, The Texas Company deducted the amount of the tax, which it had paid, from the purchase price checks it handed to the various interest holders. The amount deducted, as tax on Falls County's one-sixteenth, was $1,094.67, which amount had already been paid to the Comptroller by The Texas Company as the tax on Falls County's one-sixteenth of the oil. In November, 1934, after this amount had been paid as taxes on Falls County's part, and deducted from its check,

The Texas Company ceased paying the tax on Falls County's one-sixteenth of the oil and consequently ceased deducting it from its check.

Falls County now contends that it was a mistake for the State to charge the "gross production" tax against its one-sixteenth interest in the oil during the period from September, 1933, to November, 1934, and it has presented its claim to the Legislature now in session for $1,094.67, the amount of tax it was required to pay.

The right of the Legislature to pay claims is limited by the terms of Article III, Section 44, Constitution of the State of Texas, which says:

"The Legislature * * * shall not grant * * * by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law."

In construing this provision, Judge Critz, in the case of Austin National Bank vs. Sheppard (Comm. App.) 71 S.W. (2d) 242, said:

"We interpret this to mean that the Legislature cannot appropriate state money to 'any individual' unless, at the very time the appropriation is made, there is already in force some valid law constituting the claim the appropriation is made to pay a legal and valid obligation of the state. By legal obligation is meant such an obligation as would form the basis of a judgment against the state in a court of competent jurisdiction in the event it should permit itself to be sued." * * *

"It is our opinion that a common-law right is a right under a 'pre-existing law' within the meaning of the constitutional provision under discussion here."

In the case of Fort Worth Cavalry Club vs. Sheppard, 125 Tex. 339, 83 S.W. (2d) 660, while discussing this constitutional provision, the court said:

"It is * * * settled that a private corporation is 'any individual' within the meaning of the constitutional provision just mentioned."

In view of this holding we think we are correct in saying that a county would likewise be considered as an "individual".

We will now proceed to determine whether this claim of Falls County is supported by "pre-existing law".

— We think that by virtue of Article VII, Section 6, and Article XI, Section 9, of the Constitution of Texas, that this public school land was exempt from all State taxes. Article VII, Section 6, provides, in part, as follows:

> "All lands heretofore, or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties, * * *. Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; * * *

Article XI, Section 9, provides, in part, as follows:

> "The property of counties, cities and towns, owned and held only for public purposes, * * * and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation, * * *

That public school land is exempt from taxation by virtue of these two constitutional provisions is expressed in the case of Daugherty vs. Thompson, 71 Tex. 192, 9 S.W. 99, as follows:

> "In view of the provisions made by the Constitution of this state for the establishment and maintenance of public free schools, no one would contend that lands held by counties for that purpose were not held solely for a public purpose. Lands so set apart, and solemnly appropriated for a purpose so essentially public as is the maintenance of public free schools, must be said to be 'property devoted exclusively to the use and bene- of the public.' Such property the Constitution exempts from taxation."

In 1926 a constitutional amendment known as Article VII, Section 6a, which made agriculture and grazing school lands subject to county and certain other taxes was adopted, but it did not apply to State taxes; and as the taxes involved in this case are State taxes we think that the rule expressed in Daugherty vs. Thomp-

son, 71 Tex. 192, 9 S.W. 99, applies to this case.

Now that we have determined that the land in question is exempt from State taxation, we are confronted with the question of whether or not that part of the oil retained by the owner (a one-sixteenth in this case) is subject to the gross production tax on oil. That question is answered by the case of Group No. 1 Oil Corporation vs. Sheppard (Ct. Civ. App.) 89 S.W. (2d) 1021 (writ error refused), decided in 1935, in which it was held that in the case of University land owned by the University of Texas, which was not subject to State taxes, the State was not entitled to collect a gross production tax under Article 7057a on the University's royalty interest in the oil produced from the land. We think that the same rule would apply to public school land belonging to counties. In both cases, in the case of the University land and in this case of public school land, the land is not subject to State taxes, and it follows that the oil retained by the owner is not subject to the State's gross production tax.

The only conclusion that we can reach is that Falls County was not liable for a gross production tax on that part of the oil or the interest in the oil retained by it in the form of a royalty interest; and, therefore, it was a mistake for the State to collect such a tax, which was ultimately paid by Falls County.

It has been suggested that if Falls County is entitled to recover these taxes that it is limited to the remedy prescribed in paragraph (13), Section 1, of Article 7057a, which reads as follows:

"When it shall appear that a taxpayer to whom the provisions of this Act shall apply has erroneously paid more taxes than were due during any tax paying period either on the account of a mistake of fact or law, it shall be the duty of the State Comptroller to credit the total amount of taxes due by such taxpayer for the current period with the total amount of taxes so erroneously paid."

We do not believe that this Article precludes Falls County from recovering its money from the State in some other manner, one of our reasons for so believing being that Falls County does not have any occasion to make any payments of gross production taxes to the Comptroller, all payments being made by the "first purchaser", and, therefore, the county could never get the "credit" provided for in paragraph (13).

It is our opinion that Falls County has a valid claim against the State for $1,094.67, and that the Legislature has au-

Honorable E. L. Lindley, March 28, 1939, Page 6

thority to provide for payment of it.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Cecil C. Rotsch_

Cecil C. Rotsch
Assistant

COR:FG

APPROVED:

FIRST ASSISTANT ATTORNEY GENERAL